UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANDERSON TRUCKING SERVICE, INC., <br><br> Plaintiff, <br> v. <br><br> EAGLE UNDERWRITING GROUP, INC., WOODS HOLE OCEANOGRAPHIC INSTITUTION, RIDGEWAY INTERNATIONAL USA, INC., AUSTRALIAN NATIONAL MARITIME MUSEUM, <br><br> Defendants. | 3:17-cv-000817 (CSH) <br><br><br> JANUARY 25, 2018 |

## RULING ON PLAINTIFF'S MOTION TO DISMISS

**HAIGHT, Senior District Judge:**

Plaintiff Anderson Trucking Service, Inc., ("Plaintiff") brings this action against Defendants Eagle Underwriting Group, Inc., Woods Hole Oceanographic Institution, Ridgeway International USA, Inc., and the Australian National Maritime Museum, seeking a declaratory judgment. The matter involves the interrupted journey of a submarine from Woods Hole, Massachusetts, destined for Australia. While in transit with the submarine in tow, Plaintiff's vehicle caught fire, resulting in damage. Plaintiff seeks a declaration that it is not liable for any damage incurred by the submarine, or, in the event it is found liable for such damage, its liability is limited. Defendant Ridgeway International USA, Inc. ("Ridgeway") has answered Plaintiff's Complaint, and has asserted counterclaims against Plaintiff, alleging, *inter alia*, that is entitled to be indemnified by Plaintiff. Plaintiff has moved to dismiss Ridgeway's counterclaims. This Ruling resolves that motion.

1

1. **Background**[1]

Plaintiff alleges that Ridgeway, a freight forwarder, or a Non-Vessel Operating Common Carrier ("NVOCC"), was hired by Defendant Woods Hole Oceanographic Institution ("WHOI") and/or Defendant Australian National Maritime Museum ("ANMM") to arrange for the transport of a "used submarine" from Woods Hole, Massachusetts to the Commonwealth of Australia. Complaint for Declaratory Judgment, Doc. 1 ¶ 13. The submarine was to be provided without charge to ANMM by WHOI. *Id.* ¶ 14. According to Plaintiff, the transport of the submarine was to be one continuous movement "on a through, ocean, or combined transport bill of lading or waybill, subject to Ridgeway's terms of service." *Id.* ¶ 15-16. Ridgeway notified Plaintiff that the value of the submarine was five million dollars. *Id.* ¶ 23. Plaintiff informed Ridgeway that at the quoted price to transport the submarine, $1600, it would not accept liability for the full value of the vessel. *Id.* Plaintiff told Ridgeway that its customers should purchase insurance, and such insurance was indeed purchased from Defendant Eagle Underwriting Group, Inc. ("Eagle"). *Id.* ¶ 24-5.

Plaintiff alleges that Ridgeway arranged for the transportation of the submarine. *Id.* ¶ 20. With the authority to act as an agent for WHOI and/or ANMM, Ridgeway contracted with Plaintiff, a motor carrier, to transport the submarine on its first leg of the journey, from Woods Hole to Baltimore. *Id.* ¶ 21-22. The submarine was to then travel by ocean carrier from Baltimore, Maryland to Australia. *Id.* ¶ 20. On July 23, 2015, according to Plaintiff, Plaintiff and Ridgeway took possession of the submarine in Woods Hole. *Id.* ¶ 25. While en route on I-95 in Connecticut, Plaintiff's trailer caught fire, allegedly damaging the submarine. *Id.* ¶ 26.

---

[1] The facts recounted here are derived from the allegations in Plaintiff's Complaint for Declaratory Judgment (Doc. 1) and from Ridgeway's Answer and Counterclaims (Doc. 11).

On April 1, 2016, Defendants Eagle and WHOI filed a claim with Plaintiff for damage to the submarine, in the amount of $8,307,101. *Id.* ¶ 27. "Upon information and belief," Eagle has at least partially indemnified WHOI and/or ANMM for the loss, "and is fully or partially subrogated to Woods Hole's and/or ANMM's claim against [Plaintiff] to the extent of this indemnification." *Id.* ¶ 28.

Ridgeway denies most factual allegations in Plaintiff's Complaint, and counter-claims that any damage to the submarine was caused solely by Plaintiff's fault, neglect, or omission, and thus, to the extent any liability is imposed on Ridgeway for loss or damage to the cargo, Ridgeway claims that it is entitled to indemnity from Plaintiff, plus attorney's fees, costs, and interest. Ridgeway's Answer to Complaint and Counterclaims, Doc. 11 ¶ 31-2.

Ridgeway also claims that shortly following the fire, Ridgeway placed Plaintiff's counsel on notice of Plaintiff's duty to preserve evidence. *Id.* ¶ 34. However, when Plaintiff made the trailer available for inspection several months following the incident, Plaintiff had already destroyed relevant evidence that Ridgeway had requested to be preserved, including "driver's logs, on-board computer records, daily inspection reports and other maintenance records." *Id.* ¶ 34. Further, on October 19, 2016, during the inspection of the trailer, Plaintiff's employee "prematurely and without the consent and knowledge of all parties in attendance, backed off the trailer's slack adjustors in anticipation of removing the brakes." *Id.* ¶ 35. This caused the length of the stroke to change, destroying information crucial to assessing the cause of the fire. *Id.* Such loss of evidence has prejudiced Ridgeway in its ability to investigate the cause of the incident and has precluded it from mounting a full and complete defense to Plaintiff's claims, according to Ridgeway's counterclaims. *Id.*

Plaintiff filed the instant motion to dismiss Ridgeway's counterclaims, with an accompanying memorandum of law in support of the motion ("Pl. Br."). Doc. 15. Ridgeway responded, opposing the motion ("Def. Br."). Doc. 20. Plaintiff did not file a reply brief.

**2.      Standard of Review**

"On a motion to dismiss, the issue is 'whether the claimant is entitled to offer evidence to support the claims.'" *Patane v. Clark*, 508 F.3d 106, 111 (2d Cir. 2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1984)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*")). This pleading standard creates a "two-pronged approach," *Iqbal*, 556 U.S. at 679, based on "[t]wo working principles". *Id.* at 678.

First, all factual allegations in the complaint must be accepted as true and all reasonable inferences must be drawn in the favor of the non-moving party. *See id.; see also Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 591-92 (2d Cir. 2007) (citation omitted). The presumption of truth does not extend, however, to "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. Second, "a complaint that states a plausible claim for relief" will survive a motion to dismiss and "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679) (internal quotation marks omitted). "Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are

barred as a matter of law.'" *Associated Fin. Corp. v. Kleckner*, 480 F. App'x 89, 90 (2d Cir. 2012) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)).

These principles apply equally to a motion to dismiss the counterclaims of a defendant. *See Kaltman-Glasel v. Dooley*, 156 F. Supp. 2d 225, 225 (D. Conn. 2001) ("In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept all allegations of the counterclaims as true and construe all reasonable inferences in favor of the defendants." (citing *Connell v. Signoracci*, 153 F.3d 74, 80 (2d Cir. 1998))). Indeed, "the issue on a motion to dismiss a counterclaim is not whether the defendant will prevail, but whether defendant is entitled to offer evidence to support [its] claims." *Id.* at 226 (citing *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000)).

**3.    Discussion**

Plaintiff argues that Ridgeway's counterclaims must be dismissed as they are preempted by the Carmack Amendment, 49 U.S.C. § 14706, *et seq.*, and/or the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701. Specifically, Plaintiff argues that "[b]ecause Ridgeway's claims against [Plaintiff] seek damages arising from the transportation of freight in international or interstate commerce, they are governed exclusively" by either COGSA or the Carmack Amendment. Pl. Br. at 2. "Accordingly, Ridgeway's claims, seeking recovery for negligence and spoliation of evidence, are preempted and must be dismissed." *Id.* at 2-3. Ridgeway responds that Plaintiff has misconstrued the nature of Ridgeway's counterclaims; that the counterclaims sound in indemnity and are contingent in nature, and are therefore not preempted by the federal law which Plaintiff cites.[2] Def.

---

[2] Ridgeway also argues that the Court should dismiss Plaintiff's Complaint, as there is no 'actual controversy' as required by 28 U.S.C. § 2201(a). Ridgeway has since filed a motion to dismiss, arguing for dismissal of Plaintiff's Complaint on separate grounds. The Court declines to construe Ridgeway's opposition papers as a motion to dismiss, and will not address Ridgeway's argument for dismissal here.

5

Br. at 1-2. Thus, the sole issue before this Court is whether Defendant's counterclaims are preempted by federal law.[3]

The Carmack Amendment, enacted in 1906 as an amendment to the Interstate Commerce Act of 1887, governs the liability of common carriers for loss or damage to goods shipped or transported in interstate commerce. *See* 49 U.S.C. § 14706(a)(1). The intent behind the Carmack Amendment was to

> provide interstate carriers with reasonable certainty and uniformity in assessing their risks and predicting their potential liability. The Carmack Amendment did this both by establishing a single uniform regime for recovery by shippers directly from the interstate common carrier in whose care their items are damaged, and by preempting the shipper's state and common law claims against a carrier for loss or damage to goods during shipment.

*Project Hope v. M/V IBN SINA*, 250 F.3d 67, 73 n.6 (2d Cir. 2001) (internal quotation marks and citations omitted). Thus, the Carmack Amendment "provides shippers with the statutory right to recover for the actual loss or injury to their property caused by any of the carriers involved in the shipment." *Cleveland v. Beltman N. Am. Co.*, 30 F.3d 373, 377 (2d Cir. 1994) (citation omitted). To effectuate the goal of uniformity, the Amendment's preemption force is broad. *See Adams Express Co. v. Croninger*, 226 U.S. 491, 505-6 (1913) ("Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it.").

"Suits under the Carmack Amendment may be brought against a carrier by any person

---

[3] While Ridgeway's counterclaims may be vulnerable to dismissal for other reasons, Plaintiff has not raised any other arguments, and a district court may not dismiss for failure to state a claim based on grounds not raised by the parties. *Jones v. Albany Cty. Civil Serv. Comm'n*, 985 F. Supp. 280, 282 (N.D.N.Y. 1997) (citing *Volvo N. A. Corp. v. Men's Int'l Professional Tennis Council*, 857 F.2d 55, 65 (2d Cir. 1988)).

entitled to recover in the carrier's 'bill of lading,' including the buyer who was to receive the goods." *Windows, Inc. v. Jordan Panel Sys. Corp.*, 177 F.3d 114, 118 (2d Cir. 1999) (citations omitted). By its very terms, the Carmack Amendment applies only to carriers and freight forwarders. *See* 49 U.S.C. § 14706(a)(1). It does not impose liability on brokers, and therefore, it has been held that "Carmack's preemption of state law claims does not extend to brokers."[4] *JAS Forwarding (USA), Inc. v. Owens Truckmen, Inc.*, No. 17-CV-03589(ADS/AYS), 2017 WL 5054715, at *5 (E.D.N.Y. Nov. 1, 2017) (collecting cases).

Further, while the Carmack Amendment preempts state and common law claims asserted by a shipper against a carrier for damage to an item during shipment, *Project Hope*, 250 F.3d at 73 n.6, it does not serve to preempt another carrier's (or a NVOCC's) claims against a carrier. *See id.* at 73 n.7 ("While the Carmack Amendment governs the liability of carriers to the original shipper of the goods . . . , the situation is different regarding the liability of the two carriers *inter sese* . . . . Ordinary rules of the applicable state's negligence law govern actions to determine which of two carriers is liable to the other." (quotation marks and citation omitted)); *see also Am. Foreign Ins. Ass'n v. Seatrain Lines of Puerto Rico, Inc.*, 689 F.2d 295, 299 (1st Cir. 1982) ("While special rules govern the liability of carriers to the original shippers of goods, . . . ordinary rules of negligence govern this action to determine which of two carriers is liable for negligence which has concededly engendered liability to the shipper." (citing the Carmack Amendment and COGSA) (collecting cases)).

In determining an entity's true status, a court does not look to how a company labels itself,

---

[4] The Carmack Amendment defines a broker as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2).

but instead to

> how it holds itself out to the world and its relationship to the shipper. Stated another way, the law determines status according to the services offered by an entity, rather than by its corporate character or declared purpose. The Courts look at whether the party holds itself out to the public generally as the actual transporter of goods as well as the services provided under the contract.

*Nipponkoa Ins. Co. v. C.H. Robinson Worldwide, Inc.*, No. 09-CV-2365(PGG), 2011 WL 671747, at *4 (S.D.N.Y. Feb. 18, 2011) (internal quotation marks, alterations, and citations omitted).

Ridgeway has denied Plaintiff's allegations that refer to it as a Non-Vessel Operating Common Carrier and as a freight forwarder. Doc. 11 ¶ 8. It has denied that it arranged for or transported the ill-fated submarine, and has further denied that the submarine was booked for transit on a through, ocean, or combined transport bill of lading or waybill. *Id.* ¶ 10. The documents attached to Plaintiff's Complaint refer variously to Ridgeway as a "Forwarding Agent" (Doc. 1-1, Dock Receipt) and a "Freight Forwarder" (Doc. 1-2, Terms of Service). "[A] district court may grant a motion to dismiss based on federal preemption, if the defense can easily be determined from the pleadings." *Marentette v. Abbott Labs., Inc.*, 201 F. Supp. 3d 374, 377 (E.D.N.Y. 2016) (quotation marks and citations omitted). Here, Ridgeway's counterclaims are devoid of any factual allegations that would shed light on the nature of the relationship. Based on the pleadings, the Court cannot determine as a matter of law that the Carmack Amendment applies.[5] Accordingly, the Court cannot

---

[5] Nor can the Court determine whether COGSA would serve to preempt Ridgeway's counterclaims. "Congress has not clearly manifested an intent that COGSA completely preempt state law as to shipping by sea." *Greenidge v. Mundo Shipping Corp.*, 41 F. Supp. 2d 354, 358 (E.D.N.Y. 1999); *but see Salis v. Am. Exp. Lines*, 566 F. Supp. 2d 216, 220 (S.D.N.Y. 2008) ("All state law claims arising under the Bill of Lading are preempted by COGSA." (citations omitted)), aff'd in part, vacated in part on other grounds, 331 F. App'x 811 (2d Cir. 2009).

dismiss Ridgeway's counterclaims as preempted by the Carmack Amendment, or by COGSA. Plaintiff's motion to dismiss Ridgeway's counterclaims on the basis of preemption is therefore DENIED, without prejudice to reassertion upon a more complete recitation of pertinent facts.

**It is SO ORDERED.**

**Dated: New Haven, Connecticut**

    **January 25, 2018**

      */s/ Charles S. Haight, Jr.*
**Charles S. Haight, Jr.**
**Senior United States District Judge**